# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10330

United States Court of Appeals
Fif h Circuit

**FILED**
January 31, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

MAURICE LAMONT DAVIS; ANDRE LEVON GLOVER,

Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas
USDC No. 3:15-CR-94

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

PER CURIAM:*

Andre Levon Glover appeals his conviction and sentence and Maurice Lamont Davis appeals his sentence[1] in this case arising out of a series of similar robberies at Murphy Oil locations across the Dallas Metroplex area during June of 2014.[2] We AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Although his prayer styles his challenges as directed only to his sentence, Davis seeks to vacate the convictions on Counts 2 and 7 as part of his requested resentencing.

[2] Counts 1 and 3–6 charged conspiracy and aiding and abetting Hobbs Act (18 U.S.C. § 1951) robberies; Counts 2 and 7 were firearms charges under 18 U.S.C. § 924(c)(1). Count

No. 16-10330

*Glover's Challenge to his Hobbs Act Convictions.* Glover challenges his convictions charging robberies in violation of the Hobbs Act which makes it unlawful to "in any way or degree obstruct[], delay[], or affect[] commerce or the movement of any article or commodity in commerce, by robbery." 18 U.S.C. § 1951(a). Glover contends that the Government failed to prove the necessary impact on interstate commerce because all the robberies occurred within one state and only impacted merchandise (cartons of cigarettes) at local stores.[3] While conceding that the cigarettes themselves were manufactured out of state, Glover argues that the inventory and replacement inventory came from local Murphy Oil distribution centers or other stores. He also contends that the evidence was insufficient to connect him to two of the robberies (June 16 and 21).

This court reviews a challenge to the sufficiency of the evidence supporting a conviction by reviewing the evidence in the "light most favorable to the verdict to determine whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt." *United States v. Lewis*, 774 F.3d 837, 841 (5th Cir. 2014) (citation omitted).

The Hobbs Act requires an effect on interstate commerce that is "identical with the requirements of federal jurisdiction under the Commerce Clause." *United States v. Villafranca,* 260 F.3d 374, 377 (5th Cir. 2001) (citation omitted). The defendant's activity on interstate commerce "need only be slight" but cannot be "attenuated." *Id.* (citation omitted). Here, cigarettes,

---

8, asserted only against Davis, was for felon-in-possession of a firearm under 18 U.S.C. § 922(g)(1).

[3] Glover also argues that the Government should be required to prove a "substantial effect" on interstate commerce but concedes that this argument is foreclosed by precedent. *United States v. Robinson*, 119 F.3d 1205, 1215 (5th Cir. 1997).

No. 16-10330

a highly regulated commodity, travelled in interstate commerce and, following the robberies, had to be replaced by cigarettes that were manufactured and shipped from other states. While the Murphy Oil stores were local, the company itself is headquartered outside of Texas and conducts business in half the states. We conclude that the evidence was sufficient to support the interstate commerce nexus.

With respect to Glover's other sufficiency challenge, we note that Glover was apprehended following the second robbery on June 22. The similarities of the vehicles used, the clothing worn, the weapons employed, the items stolen, and the modus operandi between the June 22 robberies on the one hand and the June 16 and 21 robberies on the other are sufficient to support a conclusion by a rational juror beyond a reasonable doubt that the same person committed all of the robberies.

*Glover's and Davis's Challenges to Counts 2 and 7.* Both Glover and Davis contend that their convictions under 18 U.S.C. § 924(c) cannot stand in light of *Johnson v. United States,* 135 S. Ct. 2551 (2015), which found a different statutory section to be unconstitutionally vague. In *Johnson*, the Court found the following portion of 18 U.S.C. § 924(e)(2)(B)(ii), known as the residual clause, defining "violent felonies" unconstitutionally vague: "or otherwise involves conduct that presents a serious potential risk of physical injury to another." In contrast to that language, § 924(c) involves the phrase "crime of violence" which, in turn, is defined, in relevant part, as a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

Sitting en banc, we recently considered a similar argument involving 18 U.S.C. § 16(b), which contains the exact language of § 924(c)(3)(B), and held that the language is not unconstitutionally vague in light of *Johnson. United*

3

No. 16-10330

*States v. Gonzalez-Longoria*, 831 F.3d 670, 677 (5th Cir. 2016) (en banc), *petition for cert. filed*, (Sept. 29, 2016)(No. 16-6259).  We reasoned that in contrast to the residual clause language at issue in *Johnson*, the risk of physical *force* in 18 U.S.C. § 16(b)—as opposed to the risk of physical *injury*—is more definite.  *Id.* at 676.  We concluded that by requiring the risk of physical force to arise "in the course of committing" the offense, the provision "does not allow courts to consider conduct or events occurring after the crime is complete."  *Id.* (citation omitted).

We recognize the possibility that identical language in two different statutes could be differently construed but see no reason to do so here.  We join several other circuits in concluding that *Johnson* does not invalidate § 924(c)(3)(B).  *See United States v. Prickett*, 839 F.3d 697, 699–700 (8th Cir. 2016); *United States v. Hill*, 832 F.3d 135, 145–49 (2d Cir. 2016); *United States v. Taylor*, 814 F.3d 340, 376–79 (6th Cir. 2016), *petition for cert. filed*, (Oct. 6, 2016)(16-6392).[4]  We therefore do not reach the question of whether the Hobbs Act robbery charges would include a "use of force" element under 18 U.S.C. § 924(c)(3)(A).

*Davis's Challenge to the Armed Career Criminal Act (ACCA) Enhancement.*  Davis argues that his prior convictions under Texas law for burglary of a building are not "crimes of violence" for purposes of the ACCA because the statutes under which he was convicted, Texas Penal Code § 30.01(a)(1) and (a)(3), are not divisible under *Mathis v. United States*, 136 S. Ct. 2243 (2016), and some parts of these statutes do not qualify as "crimes of

---

[4] Glover's alternative argument that the jury should decide what constitutes a crime of violence is meritless.  A determination of whether a Hobbs Act robbery and respective conspiracy offenses should be classified as a crime of violence is a question of law reserved for the judge.  *United States v. Credit*, 95 F.3d 362, 364 (5th Cir. 1996).

violence." However, he concedes that this challenge is foreclosed by our recent decision in *United States v. Uribe*, 838 F.3d 667, 669 (5th Cir. 2016).

*Glover's Challenge to the "Abduction" Sentencing Enhancement.* Glover contends that the district court erroneously enhanced his sentence for abduction in the June 16 (Lancaster), June 21 (Dallas), and June 22 (Mansfield) robberies because the movement of store clerks does not constitute a forced accompaniment to a "different location" within the meaning of U.S.S.G. § 2B3.1(b)(4)(A). Glover notes that the original PSR, which listed a criminal history score of I and an offense level of 28, did not contain the enhancement, presumably referring to the June 21 robbery (Dallas) because the enhancement was present for the Lancaster and Mansfield robberies. After the Government objected, the probation officer agreed that the enhancement was appropriate for the June 21 robbery. However, both the Government and the probation officer noted that, because of groupings of multiple counts, the enhancement for June 21 (Dallas) did not affect the guidelines calculation.[5] Indeed, Glover was sentenced on Counts 1 and 3–6 premised on Guidelines calculations that yielded a criminal history score of I and an offense level of 28, the same as it was before the enhancement for the June 21 (Dallas) robbery. Glover was sentenced to 78 months, the bottom of the Guidelines range, for

---

[5] Glover does nothing to explain the math underlying the alleged error. However, an examination of the PSR illuminates the issue. The page to which Glover cites to support his argument that his sentence was enhanced by the abduction enhancement is a page from the Addendum to the PSR which states: "The inclusion of such [abduction] enhancement . . . does not affect the guideline computations." His brief states that his total offense level was increased by two levels due to this enhancement. This statement presumably refers to the two counts premised on the Lancaster and Mansfield robberies where the enhancement caused his offense level to be 24 which, in turn, was the "highest offense" level to which the multiple count adjustment of four was added. Had the enhancement not been in place for any count, the next "highest offense level" was 22. In turn, with the addition of the multiple count adjustment of four levels, his offense level would have been 26, rather than 28.

those counts.[6]  Given the specifics of the calculations in this case, if either the June 16 (Lancaster) or the June 22 (Mansfield) enhancements were proper, then there would be no effect on his guidelines range making any error as to any other count harmless.  *United States v. Castro-Alfonso*, 841 F.3d 292, 294 (5th Cir. 2016) (harmless error review applies to procedural sentencing errors).

We review the district court's application of the Sentencing Guidelines de novo and its factual findings for clear error.  *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation omitted).  "There is no clear error if the district court's finding is plausible in light of the record as a whole."  *Id.* (citation omitted).

The Guidelines direct a court to enhance a defendant's sentence by four levels "[i]f any person was abducted to facilitate commission of the offense or to facilitate escape."  U.S.S.G. § 2B3.1(b)(4)(A).  The Guidelines define "abducted" to mean that "a victim was forced to accompany an offender to a different location.  For example, a bank robber's forcing a bank teller from the bank into a getaway car would constitute an abduction."  § 1B1.1 cmt.n.1.

The term "different location" is interpreted on a case-by-case basis.  *United States v. Hawkins*, 87 F.3d 722, 726–28 (5th Cir. 1996).  The term is "flexible and thus susceptible of multiple interpretations" and is "not mechanically based on the presence or absence of doorways, lot lines, thresholds, and the like."  *Id.* at 728.  In *Hawkins*, this court held that, despite escaping, the victims were "abducted" when a gunman forced them to walk approximately 40 to 50 feet from a location near his truck to a location near a van in the same parking lot.  *Id.* at 728.

---

[6] Glover received consecutive sentences of 120 months and 300 months on Counts 2 and 7, respectively, for a total of 498 months.

During the robbery of the Lancaster Murphy Oil on June 16, the store clerk testified that Glover's accomplice grabbed her from behind and forced her to go from the main kiosk "to the back part of the storage building" where the inventory is kept. The clerk was told to open the door and then "he forced [her] down once [she] got in the [storage] room." The robbery of the Mansfield Murphy Oil on June 22 occurred under similar circumstances. The clerk testified that as she was dragging the candy rack out of the storage room, a robber held a gun to her head and told her to get back into the storage room. The PSR concluded from the Lancaster and Mansfield robberies that the clerks were forced "to move from one area to another area, namely, the outside of the kiosk to the inside of the storage room," constituting abduction under § 2B3.1(b)(4)(A). We agree and conclude that the district court did not err in applying this enhancement.

Concluding that all of Davis's and Glover's challenges fail, we AFFIRM.